# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 5571 | **DATE** | 2/6/2002 |
| **CASE TITLE** | | OLE K. NILSSEN vs. MOTOROLA, INC. | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing held and continued to 4/3/02 at 9:00 a.m. Court will address Special Masters request for fees at this status. Enter Memorandum Opinion And Order. Nilssen's motion for summary judgment as to defendant MagneTek is granted in part and denied in part. Nilssen's motion for Summary Judgment as to defendant MagneTek is granted as to direct infringement of claims 3 and 6 of the 409 Patent, induced and contributory infringement of claims 3 and 6 of the 409 Patent, direct infringement of claim 7 of the 795 Patent, and induced and contributory infringement of claim 7 of the 795 Patent. Nilssen's Motion for Summary Judgment as to Defendant MagneTek as to all other claims is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | FEB 08 2002 | date docketed | |
| ✓ | Docketing to mail notices. | | | 137 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | | date mailed notice | |
| | | | mailing deputy initials | |

Date/time received in central Clerk's Office

Document Number

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION



DOCKETED

FEB 0 8 2002

|  |  |  |
|---|---|---|
| OLE K. NILSSEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 96 C 5571 |
| v. | ) | |
| | ) | |
| MOTOROLA, INC., and MOTOROLA | ) | Judge John W. Darrah |
| LIGHTING, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| OLE K. NILSSEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 98 C 2229 |
| v. | ) | |
| | ) | Judge John W. Darrah |
| MAGNETEK, INC., | ) | |
| | ) | |
| Defendant and Counter-Plaintiff. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Ole K. Nilssen ("Nilssen"), commenced a multi-patent infringement action against

Motorola, Inc. and its subsidiary, Motorola Lighting, Inc. (collectively "Motorola"), relating to

electronic ballasts (96 C 5571). Subsequently, Nilssen commenced a multi-patent infringement

action against MagneTek, Inc. (MagneTek), also relating to electronic ballasts (98 C 2229). The

suits have been consolidated.

Defendants and Plaintiff in both actions submitted motions for summary judgment. Motorola

and MagneTek both seek summary judgment of no infringement and/or invalidity of several claims

*137*

of several different patents against both Motorola and MagneTek. Nilssen seeks summary judgment of infringement on certain claims of several different patents. The discussion of each parties' motions are separated by case and party to help clarify each parties arguments as to each claim of each patent as several of the arguments and claims overlap.

The matter was referred to a Special Master for a report and recommendation on the pending motions for summary judgment. The Special Master's reports have been received, and the parties have filed objections to certain aspects of the reports, pursuant to Federal Rule of Civil Procedure 53(e), and other miscellaneous motions. The pending motions for summary judgment, the parties' objections to the Special Master's reports, and the miscellaneous motions are addressed below.

The parties filed motions seeking leave to file responses to the objections to the Special Master's report. The parties fully briefed motions for summary judgment, the Special Master's reports, and the parties' objections to the Special Master's reports are presently before the Court and sufficiently apprise the Court of the facts and arguments of the cases. Accordingly, additional responses to the objections of the Special Master's reports are not required, and the parties' motions to file these responses are denied.

## LEGAL STANDARDS

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could

2

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When a district court reviews a special master's report and recommendation, the general rule is that the district court steps into the shoes of an appellate court and employs the same standards that an appellate court uses to review a lower court opinion. Thus, a district court reviews a special master's legal conclusions *de novo* and accepts his findings of facts unless they are clearly erroneous. Fed. R. Civ. P. 53(e)(2); *Cook v. Niedert*, 142 F.3d 1004, 1010 (7th Cir. 1998).

A patent infringement analysis consists of two steps. In the first step, the meaning and scope of the patent claims asserted to be infringed are determined. The second step entails proving the infringement by comparing the properly construed claims to the device accused of infringing. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*Markman*). The claim construction for the present disputed patents has previously been determined. *See Nilssen v. MagneTek, Inc.*, 1999 WL 982966 (N.D. Ill. Oct. 26, 1999); *Nilssen v. Motorola*, Inc., 80 F.Supp. 2d 921 (N.D. Ill. 2000); *Nilssen v. Motorola, Inc.*, 2000 WL 369397 (N.D. Ill. April 7, 2000); *Nilssen v. MagneTek, Inc.*, 2000 WL 369747 (N.D. Ill. April 10, 2000); *Nilssen v. MagneTek, Inc.*, 2000 WL 876052 (N.D. Ill. June 29, 2000).

"In order to prove infringement, a patentee must show that every limitation of the claims asserted to be infringed is found in the accused device." *Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1565 (Fed. Cir. 1997). As a matter of law, an accused device cannot infringe if even a single limitation is not satisfied. *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1349 (Fed. Cir. 1998).

Infringement is proved either literally or under the doctrine of equivalents. *See Bai v. L &*

3

*L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir.1998). "To establish literal infringement, every limitation set forth in a claim must be found in the accused product, exactly." *Southwall Technologies, Inc. v. Cardinall IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995). Where, as in the present case, the structure of the product is undisputed, the literal infringement analysis collapses into a claim construction and, as a matter of law, is amenable to summary judgment. *Desper Prods., Inc. v. Qsound Labs*, 157 F.3d 1325, 1332-333 (Fed. Cir. 1998) *(Desper)*.

"In order for an accused structure to literally meet a Section 112, paragraph 6 means-plus-function limitation, the accused structure must either be the same as the disclosed structure or be a Section 112, paragraph 6 'equivalent', i.e., (1) perform the identical function and (2) be otherwise insubstantially different with respect to structure." *Kemco Sales, Inc. v. Control Papers, Co.*, 208 F.3d 1352, 1364 (Fed. Cir. 2000) *(Kemco)*. Structures are "insubstantially different" if they perform the identical function, in substantially the same way, with substantially the same result. *Kemco*, 208 F.3d at 1364.

Under the doctrine of equivalents, an accused device infringes only if it possesses all of the limitations of the claim either literally or equivalently. *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998). The "doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Warner-Jenkinson v. Davis*, 570 U.S. 17, 29 (1997) *(Davis)*. Furthermore, application of the doctrine cannot be used to erase limitations from the claim. *Davis*, 570 U.S. at 29. The differences between the accused device and the claim limitation must be "insubstantial" to possess an equivalent claim limitation. *Desper*, 157 F.3d at 1338. This analysis generally turns on whether the accused device performs substantially the same function in substantially the same way to achieve substantially the same result. *Alpex Computer Corp. v.*

4

*Nintendo Co.*, 102 F.3d 1214, 1222 (1996).

The tests for equivalence under Section 112, Paragraph 6, and the doctrine of equivalents are closely related. Both tests require that each claim limitation be met by an equivalent element in the accused device. *Chiuminatta Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1310-311 (Fed. Cir. 1998) (*Chiuminatta*). Two structures under § 112, ¶ 6 may be equivalents only if they perform the identical function, in substantially the same way, with substantially the same result. Whereas, equivalence under the doctrine of equivalents is minimally broader by requiring that the two structures perform substantially the same function. *Kemco*, 208 F.3d at 1364. Furthermore, a structural equivalent under § 112, ¶ 6 must have been available at the time the claim issued. Therefore, an "after arising equivalent" can only infringe under the doctrine of equivalents. *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1320 (Fed. Cir. 1999) (*Al-Site*). In other words, an equivalent structure under § 112 for literal infringement must have been available at the time of patent issuance while an equivalent under the doctrine of equivalents may arise after patent issuance and before the time of infringement. *Al-Site*, 174 F.3d at 1320. However, the two equivalence analyses collapse into one when the technology alleged to be equivalent was known before the patentee's invention. *Chiuminatta*, 145 F.3d at 1311. "Because the 'way' and 'result' prongs are the same under Section 112, paragraph 6 and the doctrine of equivalents tests, a structure failing the Section 112, Paragraph 6 test under either or both prongs must fail the doctrine of equivalents test for the same reason(s)." *Kemco*, 208 F.3d at 1364.

Another factor affecting the issue of infringement is the doctrine of prosecution history estoppel. The doctrine of prosecution history estoppel prohibits the application of equivalents and precludes a patentee from obtaining coverage under the doctrine of equivalents of subject matter that

was relinquished during the prosecution of the patent. *General Elec. Co. v. Nintendo Co.*, 179 F.3d 1350, 1362 (Fed. Cir. 1999). If the claim limitations at issue were amended and the amendment narrowed the literal scope of the claim, prosecution history estoppel bars the application of the doctrine of equivalents to the claim limitation, unless the patent holder establishes that the amendment was for a purpose unrelated to patentability. *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1356,1366 (Fed. Cir. 2001) (*Ecolab*); *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 249 F.3d 1314, 1326 (Fed. Cir. 2001) (*Lockheed*); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558, 586 (Fed. Cir. 2000) (*Festo*). Prosecution history estoppel also prohibits a patentee from obtaining § 112, ¶ 6 subject matter that was relinquished during prosecution. *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1457 (Fed. Cir. 1998) (*Cybor*).

Prosecution history estoppel occurs as a result of arguments made during prosecution of the patent that show a clear and unmistakable surrender of subject matter through amendments made to overcome patentability rejections (*Bayer AG v. Elan Pharmaceutical Research Corp.*, 212 F.3d 1241, 1251 (Fed. Cir. 2000)), or through unequivocal arguments or assertions made during patent prosecution (*Desper*, 157 F.3d at 1338). The determination of what subject matter was surrendered is an objective one, measured from the vantage point of what a competitor reasonably would conclude the patentee had relinquished in order to secure the patent. *Augustine Medical, Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291, 1299 (Fed. Cir. 1999).

<u>ISSUES</u>

I. DEFENDANT MOTOROLA'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 96 C 5571

Nilssen has accused Motorola of infringing several patents: United States Patent Nos.

4,677,345 (345 Patent); 5,189,342 (342 Patent); 5.416, 386 (386 Patent); 5, 432,409 (409 Patent); 5,341,067 (067 Patent); and 5,047,690 (690 Patent). (Def.'s 56.1(a)(3) Statement ¶ 7).[1] All of the patents-in-suit list Nilssen as the sole named inventor. (Id., at ¶ 8).

A. 345 Patent

The 345 Patent, entitled "Inverter Circuits," was issued on June 30, 1987. (Def.'s 56.1(a)(3) Statement ¶¶ 9-10). Nilssen accuses Motorola's dimmable ballasts of infringing claim 24 of the 345 Patent. (Id., at ¶ 11). Nilssen alleges August 14, 1980, as his conception and effective filing date for claim 24 of the 345 Patent. (Id., at ¶ 12).

Claim 24 requires a "control means connected with the inverter circuit and operative to control the transistor inversion frequency and correspondingly: (i) the impedance of the frequency-dependent impedance means, and (ii) the magnitude of the AC current supplied to the lamp; the control means being separate from and independent of the frequency-dependent impedance means." (Id., at ¶ 15). "Control means" in claim 24 of the 345 Patent is a means-plus-function limitation, and the corresponding structure for the "control means" is a toroid heater. (Id., at ¶ 16).

On December 4, 1989, the United States Patent and Trademark Office (the PTO) instituted a reexamination of the 345 Patent. (Def.'s 56.1(a)(3) Statement ¶ 17). On November 26, 1990, the examiner in charge of the reexamination issued an office action rejecting then-pending claims 1-3, 5-9, and 20-41. (Id., at ¶ 18). The then-pending claim 1 was directed to "a power supply operable to energize a gas discharge lamp." (Id., at ¶ 19). The then-pending claim 1 contained a "control

---

[1]Nilssen originally alleged infringement of additional claims of patents (claims 5, 19, and 21 of No. 5,214,356; claim 19 of No. 4,819,146, and claim 12 of No. 5,013,974); however, Nilssen has dropped these claims as indicated by his "Statement of Nonliability". Accordingly, Motorola's Motion for Summary Judgment as to these claims is denied as moot.

means" limitation identical to that found in claim 24 of the 345 Patent. (Id., at ¶ 20).

On January 25, 1991, in response to the examiner's rejection, Nilssen submitted an amendment, which included an affidavit from Dale E. Fiene (Fiene) that stated: "The 'adjustable illumination' specified in claim 1 can only be accomplished by way of providing for a toroid heating element that is located some place other than between elements 51 and 52." (Id., at ¶¶ 21-22). On May 5, 1991, the examiner found that "Fiene also states that 'the adjustable illumination' specified in claim 1 can only be accomplished by way of providing for a toroid heating element that is located some place other than between elements 51 and 52. The specification is not so limited. The specification does not set forth that toroid heating elements must be used in an adjustable illumination control circuit." (Id., at ¶ 24) On May 7, 1991, the examiner in charge of the reexamination proceeding issued a final office action rejecting several then-pending Nilssen claims, including claims 1 and 24. (Id., at ¶ 23).

On June 26, 1991, Nilssen submitted a request for reconsideration regarding the examiner's May 7, 1991 final office action, in which Nilssen stated that Fiene was an expert and that it was Fiene's expert opinion that the only reasonable way of obtaining the 'adjustable illumination' was by providing a toroid heater between elements 51 and 52. (Id., at ¶ 25). On May 12, 1992, Nilssen submitted an amendment after the final office action, stating that claim 24 was derived from the corrected original claim 1. (Id., at ¶ 26).

As noted above, Nilssen alleges Motorola's dimmable ballasts infringe claim 24 of the 345 Patent. Motorola argues that summary judgment in its favor is proper because Motorola's dimmable ballasts do not contain a toroid heater and that Nilssen is precluded by the doctrine of prosecution estoppel from asserting that Motorola's modulation circuit is an equivalent to the toroid heater.

The Special Master found that Nilssen was precluded by the doctrine of prosecution estoppel from asserting Motorola's ballast contained an equivalent to the toroid heater and recommended granting summary judgment as to this claim. The Special Master based this finding upon Fiene's affidavit and Nilssen's request for reconsideration in which Nilssen asserted that a toroid heater was the only feasible way of obtaining adjustable illumination.

Nilssen objects to the Special Master's finding, arguing that Fiene's affidavit also states that a toroid heater can consist of an equivalent element. In Fiene's affidavit, he avers, in pertinent part, that, "This heating element would be element 81 ... (or some other element equivalent thereof); which element 81 is plainly identified as "Toroid Heater ...." (Fiene Jan. 21, 199 Aff., at 4). In that same affidavit, Fiene answered a question by the examiner, averring, in pertinent part, "that the toroid heater of the amendment is indeed the same as element 81, or the equivalent thereof". Nilssen failed to identify or rely on the quoted sections above in anyway in his response to Motorola's Motion for Summary Judgment.

The above demonstrates that Nilssen's expert, and Nilssen himself through his request for reconsideration regarding the Examiner's May 7, 1991 final office action, told the PTO, and thus the public, that a toroid heater was the only feasible way of obtaining "adjustable illumination" – a feature expressly required by claim 24 and one of the functions the claim recites for the 'control means' limitation. Nilssen is bound by his representations.

All the motions for summary judgment have been fully briefed more than a year ago. The briefs and supporting factual material have been analyzed by this Court and referred to the Special Master. This material has been reexamined by the Court along with the Special Master's findings based on these briefs. Nilssen, now for the first time, identifies language from which he now

9

attempts to argue that an equivalent to a toroid heater could be used instead of a toroid heater. In essence, Nilssen improperly seeks to have the Court reconsider how it should rule by bringing forth purportedly new facts and argument when such facts and argument were known to Nilssen when it responded to Motorola's motion.

"A party seeking to defeat a motion for summary judgment is required to 'wheel out all of its artillery to defeat it.'" *Caisse Nationale De Credit Agricole v. CBI Indust., Inc.*, 90 F. 3d 1264, 1270 (7th Cir. 1996) (*Caisse*). The purpose of a summary judgment motion is to "'smoke out' the facts so that the judge can decide if anything remains to be tried." *Conway Corp. V. Ahlemeyer*, 754 F. Supp. 604, 606 (N.D. Ill. 1991) (*Conway*). Accordingly, the proper time for Nilssen to bring forth material facts and arguments is the response to Motorola's Motion for Summary Judgment. It is not proper to raise a new theory in objections to the findings of the Special Master after the motions have been fully briefed and the material issues joined. *See generally, Caisse*, 90 F.3d at 1270; *Conway*, 754 F. Supp. at 606.

Based on the above findings, the Special Master's recommendation as to the infringement of claim 24 of the 345 Patent is adopted, and Motorola's Motion for Summary Judgment as to no infringement of claim 24 of the 345 Patent is granted.

B. 342 Patent

The 342 Patent, entitled "Parallel-Tuned Electronic Ballast," was issued on February 23, 1993. (Def.'s 56.1(a)(3) Statement ¶¶ 59-60). Nilssen accuses Motorola's instant-start, half-bridge product line of infringing claims 3, 5, and 14 of the 342 Patent. (Id., at ¶ 61). Nilssen alleges an October 5, 1984 conception and effective filing date for claims 3, 5, and 14 of the 342 Patent. (Id., at ¶ 62). Claims 3 and 5 of the 342 Patent both depend from claim 1 of the 342 Patent. Claim 1 of

the 342 Patent contains a limitation requiring an "inverter reference terminal". (Id., at ¶ 63).

Motorola argues that part of the 342 Patent specification should be read into the claim for the "inverter reference terminal". The Special Master rejected this argument, finding that Motorola was, in effect, reading a limitation into the claim. The Court adopts this finding of the Special Master. *See Comark Comm., Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998) (limitations from specifications are not read into a claim). Accordingly, Motorola's Motion for Summary Judgment as to no infringement of claims 3 and 5 of the 342 Patent is denied.

Motorola also argues that claims 3, 5, and 14 of the 342 Patent are invalid because they are anticipated by prior art in three other patents. An individual is not entitled to a patent if the invention was patented or described in a printed publication more than one year prior to the date of the application for the patent in the United States. 35 U.S.C. § 102(b). To anticipate a claim, a prior art reference must disclose, either explicitly or inherently, every limitation of the claimed invention. *Atlas Powder Co. v. Ireco Corp.*, 190 F.3d 1342, 1346 (Fed. Cir. 1999) (*Atlas*). A prior art reference may anticipate a claim when the claim limitation is not expressly found in the reference if it is inherent in the prior art. Through the principles of inherency, if the prior art necessarily functions in accordance with, or includes, the claimed limitations, it anticipates. *Atlas*, 190 F.3d at 1347.

French Patent No. 2,165,037, issued to Nguyen, was published in 1973. The Special Master recommended denying Motorola's claim of invalidity based on the Nguyen Patent, finding a question of material fact exists as to whether the L-C circuit in Nguyen is "tuned" or "resonant" as required by the claims. Motorola's expert declares that it is (Stevens Decl., July 28, 2000 ¶ 72), while Nilssen's expert declares that there nothing in Nguyen indicating that the circuit is tuned or resonant (Wisbey Decl., Dec. 12, 2000, ¶ 16).

Motorola objects to the Special Master's denial of a finding of invalidity, arguing that there is no *genuine* issue of material fact because Motorola believes that the Special Master, as one skilled in the art, can easily determine whether Nguyen discloses a tuned or resonant circuit, regardless of the positions taken by the parties' experts. (Emphasis by Motorola).

The Court rejects Motorola's argument and adopts the recommendation of the Special Master as to invalidity based on the Nguyen Patent. In essence, Motorola improperly seeks to have the Special Master "break a tie" between the parties' experts and their opposite opinions whether the L-C circuit in Nguyen is or is not tuned or resonant as described above. 'Summary judgment in favor of the party with the burden of persuasion ... is inappropriate when the evidence is susceptible of different interpretations or inferences ....' *See Oney v. Ratliff*, 182 F.3d 893, 895 (Fed. Cir. 1999) (*Oney*), quoting *Hunt v. Cromartie*, 526 U.S. 541 (1999).

A United States Patent No. 4,392,087 was issued to Zansky on July 5, 1983, more than one year before Nilssen's conception date of the 342 Patent. The Special Master recommended denying a finding of invalidity, finding an issue of material fact exists as to whether the Zansky's L-C circuit is "parallel-resonant". Motorola makes the same argument above, contending that the Special Master can make this determination. For the reasons stated above, the Court adopts the Special Master's recommendation as to invalidity based on the Zansky Patent.

A United States Patent No. 4,460,949, issued to Steigerwald, was filed on September 30, 1998, more than one year before Nilssen's conception date of the 342 Patent. The Special Master recommended denying a finding of invalidity, finding that a material issue of fact exists as to whether Figure 4 of Steigerwald discloses "transistors", thus meeting every limitation of the claims. Motorola objects to the Special Master's findings as above and seeks to have the matter returned to

12

the Special Master for a recommendation on the disputed issue. As stated above, the Special Master is not a "tie breaker". *See Oney*, 182 F.3d at 895. Therefore, the Court adopts the recommendation of the Special Master as to invalidity based on the Steigerwald Patent.

Based on the above findings, Motorola's Motion for Summary Judgment as to no infringement of claims 3 and 5 of the 342 Patent and invalidity of claims 3, 5, and 14 of the 342 Patent is denied.

C. 386 Patent

The 386 Patent, entitled "Electronic Ballast with Controlled DC Rail Voltage," was issued on May 16, 1995. (Def.'s 56.1(a)(3) Statement ¶¶ 66-67). Nilssen accuses Motorola's instant start, half-bridge product line of infringing claims 7, 30, and 39 of the 386 Patent. (Id., at ¶ 86). Nilssen alleges a February 22, 1983 conception and effective filing date for claims 7 and 30 of the 386 Patent. (Id., at ¶ 69). Nilssen alleges an October 5, 1984 conception and effective filing date for claim 39 of the 386 Patent. (Id., at ¶ 70).

Motorola argues that claim 7 of the 386 Patent is anticipated by the United States Patent No. 3,341,737, issued on September 12, 1967 to Rosa. Nilssen argues that claim 7 is not anticipated because the Rosa Patent does not disclose "a substantially sinusoidal voltage between the AC rail terminals" as found in the 386 Patent. Motorola counters that Figure 5 of the Rosa Patent and deposition testimony of their expert demonstrate that the Rosa Patent causes a substantially sinusoidal voltage. However, Motorola's expert testified that Figure 5 of the Rosa Patent was not substantially sinusoidal, and the expert's other testimony regarding the substantial sinusoidal voltage does not demonstrate the absence of an issue of material fact as to whether the Rosa Patent does produce a substantially sinusoidal voltage between the AC rail terminals.

The Special Master recommended denying summary judgment on this claim, finding the above established an issue of material fact with respect to the anticipation of claim 7 of the 386 Patent by Rosa. Motorola objects to the Special Master's recommendation, arguing that the Special Master could make the determination of whether Rosa discloses a substantially sinusoidal voltage. As previously stated, the Special Master is not a "tie breaker". *See Oney*, 182 F.3d at 895. Therefore, the Court rejects Motorola's objection and adopts the Special Master's recommendation as to invalidity based on the Rosa Patent.

Motorola argues that claim 30 of the 386 Patent is anticipated by the United States Patent No. 5,204,587, filed in February 1991 by Mortimer. Nilssen argues that claim 30 is not anticipated because the Mortimer Patent does not disclose the "DC rail voltage of substantially constant magnitude" found in claim 30 of the 386 Patent. Nilssen's expert avers that the Mortimer Patent does not anticipate claim 30 of the 386 Patent because the voltage can be varied in the Mortimer Patent. However, as explained by Motorola's expert, while the voltage may be varied, the variation is present to allow the operator to pick the level they wish to operate at, and that variance does not mean the voltage is not substantially constant. In other words, allowing for an operator to vary the bus voltage did not equate to an nonconstant voltage; it merely meant the operator could adjust the voltage and that, once adjusted, the voltage was substantially constant. Motorola's expert testified that he knew that the voltage was substantially constant because he built that particular circuit in the 1970's.

The Special Master found that whether or not Mortimer anticipated claim 30 was dependent on the meaning of "voltage of substantially constant magnitude," a term not previously construed by the court and not squarely addressed by the parties. He construed the term to mean a voltage "that

14

is fixed and cannot be adjusted or varied substantially." Based on this construction, he recommended denying Motorola's claim of anticipation because the voltage on line 24 in Mortimer could be varied.

Motorola objects to the Special Master's claim construction, arguing that the proper definition is a voltage that "does not continuously change with time absent adjustment."

For purposes of deciding the issue of summary judgment, the Court adopts the Special Master's claim construction and recommendation as to the invalidity of claim 30 of the 386 Patent.

Based on the above findings, the Special Master's recommendation as to the invalidity of claims 7 and 30 of the 387 Patent are adopted; and, therefore, Motorola's Motion for Summary Judgment as to invalidity of claims 7 and 30 of the 386 Patent is denied.

D. 409 Patent

The 409 Patent, entitled "Electronic Ballast with Parallel-Tuned Output Circuit," was issued on July 11, 1995. (Def.'s 56.1(a)(3) Statement ¶¶ 71-72. Nilssen accuses Motorola's instant start, half-bridge product line of infringing claims 9, 16, and 37 of the 409 Patent. (Id., at ¶ 73). Nilssen alleges an October 5, 1984 conception and effective filing date for claims 9, 16, and 37 of the 409 Patent. (Id., at ¶ 74).

Claims 9, 16, and 37 of the 409 Patent require an "inductor means". (Id., at ¶ 75). In the *Markman* claim construction, the court held that the "inductor means" limitation of the 409 Patent requires "a total inductance large enough to keep the current flowing from the DC source into the inverter substantially constant." *Nilssen v. Motorola*, 2000 WL 369397 at * 6 (N.D. Ill. April 7, 2000).

Motorola argues that its ballasts do not infringe on claims 9, 16, and 37 of the 409 Patent

because its ballasts do not keep the current flowing from the DC source into the inverter substantially constant. Motorola relies on tests Nilssen conducted measuring the current flowing into the inverter of Motorola's accused ballasts that demonstrate the current flowing from the DC source into the inverter in Motorola's ballasts is not substantially constant. Nilssen does not dispute the data but argues that the data relied upon by Motorola shows the current from only one winding of a two-winding inductor; therefore, the total current flowing from the DC source into the inverter should be examined.

During the prosecution history, Nilssen told the PTO that "by topographical inherency, whatever current flows through the first winding must also flow through the second winding." This statement demonstrates that if the current is constant in one winding, it is constant in the second winding; and if it is not constant in one winding, it is not constant in the other winding. Furthermore, Nilssen told the PTO that the coils of his "inductor means" are arranged exactly the opposite of "Keller's coils". Nilssen does not dispute that the coils of the inductor in Motorola's ballasts are arranged the same way as "Keller's coils".

The Special Master recommended granting summary judgment of no infringement of claims 9, 16, and 37 of the 409 Patent, finding that there were no issues of material fact whether the current flowing from the DC source into the inverter in Motorola's ballasts was not substantially constant as required by the 409 Patent. Nilssen objects to the Special Master's recommendation, arguing that the Special Master was incorrect because a reasonable jury could conclude that Motorola's accused ballasts meet the inductor means limitation of the 409 Patent. However, the above facts conclusively refute Nilssen's argument; and, based on the weight of those facts, the Court adopts the recommendation of the Special Master and grants Motorola's Motion for Summary Judgment as to

no infringement of claims 9, 16, and 37 of the 409 Patent.[2]

E. 067 Patent

The 067 Patent, entitled "Electronic Ballast with Trapezoidal Voltage Waveform," was issued on August 23, 1994. (Def.'s 56.1(a)(3) Statement ¶¶ 87-88). Nilssen accuses Motorola's rapid start, half-bridge and rapid start, driven ballasts of infringing claim 32 of the 067 Patent and Motorola's rapid-start half-bridge ballasts of infringing claims 4 and 21 of the 067 Patent. (Id., at ¶¶ 89-90). Nilssen alleges an August 14, 1980 conception and effective filing date for claims 4, 21, and 32 of the 067 Patent. (Id., at ¶ 91).

Motorola argues that claims 4, 21, and 32 of the 067 Patent are anticipated by the United States Patent No. 4,251,752 filed by Stolz on May 7, 1979, more than one year before Nilssen's claimed August 14, 1980 conception date. Nilssen argues that the Stolz art did not anticipate the 067 Patent because the 067 Patent requires a "trapezoidal waveform" and the Stolz Patent has a "square wave" voltage, and the two types of voltage are different. Motorola counters that Nilssen is precluded from arguing that a trapezoidal and square waveform are different because Nilssen argued to the PTO that a square wave is "necessarily" a trapezoidal waveshape. Nilssen does not dispute that during the prosecution of the 067 Patent he argued to the PTO that it was acceptable to call a trapezoidal waveform a "substantially square wave voltage." Based on his statements during prosecution of the patent, Nilssen is barred from claiming a trapezoidal and square wave form are not equivalent. *See Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 531-32 (Fed. Cir. 1996) (a

_____

[2]Motorola also argues, in the alternative, that the claims of the 409 Patent are invalid pursuant to the on-sale bar provision of 35 U.S.C. § 102(b) because the MagneTek ballasts Nilssen accuses of infringing in *Nilssen v. MagneTek* were on sale more than a year before the earliest filing date to which Nilssen is entitled to protection. This argument is fully addressed below in MagneTek's Motion for Summary Judgment.

representation made by an inventor to induce the PTO to grant a patent binds the inventor later, when patent issues are disputed).

Based on the above facts, the Special Master recommended granting Motorola's Motion for Summary Judgment of no infringement. The Special Master noted that claim 32 "could possibly be read more narrowly in light of the 067 Patent specification ..." However, he rejected Nilssen's attempt to distinguish Stolz based on a narrow interpretation of claim 32 because Nilssen failed to present any argument why the claim should be construed so narrowly.

Nilssen objects to the Special Master's recommendation, arguing that claim 32 should be construed narrowly, and he now presents argument why such an interpretation is appropriate and requires the rejection of Motorola's invalidity claim. Nilssen did not present this argument in his Motion for Summary Judgment or his response to Motorola's Motion for Summary Judgment. Nilssen argues that claim 32 requires four sub-periods, each having a non-negligible duration; while Stolz, with a square wave, only has 2 sub-periods of a non-negligible duration. In support of his argument, Nilssen cites to specifications showing that the voltage rise was "restrained" and slowed to establish transition times that are non-negligible and statements made during the prosecution of the patent in which Nilssen distinguished the wavelengths of the 067 Patent from the Walker Patent which provided for a square wave output.

Nilssen seeks to have the Court resubmit the issue of 067's claim construction to the Special Master pursuant to Federal Rule of Civil Procedure 53(e)(2) so that he may review the newly presented evidence and argument. Motorola seeks to strike Nilssen's this evidence and new argument, arguing that it is improper and unfair for Nilssen to introduce this evidence and new argument in his objection to the Special Master's report.

18

As noted above, significant time and resources have been expended by the Court, the Special Master, and the parties. To permit further development of these additional matters after the expiration of more than ample discovery and briefing period, and after the issues have been drawn, would not contribute to a timely and just resolution of the dispute. Nilssen had ample opportunity to submit all of his arguments and available facts in support of his Motion for Summary Judgment and in opposition to Motorola's Motion for Summary Judgment. Therefore, Nilssen's motion to submit new theories and issues to the Special Master is denied.

Furthermore, Motorola's Motion to Strike New Evidence and New Arguments Raised in Nilssen's Objections to the Special Master's Report is granted. The proper time for Nilssen to assert arguments and allegations in opposition to Motorola's Motion for Summary Judgment was in his response to Motorola's motion, not during his objections to the findings of the Special Master, long after the motions have been fully briefed and filed. *See generally, Caisse*, 90 F.3d at 1270; *Conway*, 754 F. Supp. at 606.

Based on the above, the Court adopts the Special Master's recommendation as to a finding of invalidity, denies Nilssen's motion to resubmit the claim construction to the Special Master, grants Motorola's motion to strike, and grants Motorola's Motion for Summary Judgment as to invalidity of claims 4, 21, and 32 of the 067 Patent.

F. 690 Patent

The 690 Patent, entitled "Inverter Power Supply and Ballast Circuit," was issued on September 10, 1991. (Def.'s 56.1(a)(3) Statement ¶¶ 94-95). Nilssen accuses Motorola's rapid start, half-bridge ballast of infringing claim 17 of the 690 Patent. (Id., at ¶ 96). Nilssen alleges an August 14, 1980 conception and effective filing date for claim 17 of the 690 Patent. (Id., at ¶ 97). Claim

17 of the 690 Patent requires a "circuit means connected between the inverter output terminals and the lamp terminals, thereby to provide lamp operating voltage to the lamp terminals." (Id., at ¶ 99).

Motorola argues that its accused ballast does not infringe on claim 17 of the 690 Patent because Motorola's patent does not contain "an inductor directly coupled to the ballasts's inverter, with auxiliary windings coupled to the lamp's filaments" as required by claim 17 of the 690 Patent. Motorola's expert testified consistent with Motorola's argument, and Nilssen's expert testified that Motorola's primary winding is connected directly with the inverter and that Motorola's ballasts's "circuit means" functions in substantially the same way as the circuit means in claim 17 of the 690 Patent.

Based on the different expert opinions, the Special Master recommended denying Motorola's Motion for Summary Judgment as to no infringement of this claim, finding such differing opinions created a genuine issue of material fact. Motorola objects to the Special Master's recommendation, arguing that the schematics clearly support their expert's opinion; thus, no genuine issue of fact exists.

In light of the different expert opinions of whether Motorola's ballasts function in substantially the same way as claim 17 of the 690 Patent, the Court adopts the recommendation of the Special Master and denies Motorola's Motion for Summary Judgment as to the invalidity of claim 17 of the 690 Patent.

Motorola also argues that claim 17 of the 690 Patent is anticipated by United States Patent No. 4,207,497 of the Capwell Patent that was filed on December 5, 1978 and issued on June 10, 1980. Nilssen argues that the Capwell Patent does not anticipate claim 17 of the 690 Patent because claim 17 of the 690 Patent requires that the cathode heating voltage have a higher magnitude before

lamp ignition than after ignition, and the Capwell Patent does not disclose such a cathode heating voltage.

Motorola's expert testified in his deposition that it was inherent that the cathode heating voltage would be higher before the lamp is ignited. Nilssen's expert avers that the Capwell circuit is not series-resonant and that it is not inherent in Capwell that the cathode heating voltage has a substantially higher magnitude before lamp ignition than after lamp ignition.

The Special Master recommended denying Motorola's claim of invalidity as to this claim, finding that an issue of material fact exists as to whether the Capwell Patent inherently discloses a cathode heating voltage having a substantially higher magnitude before lamp ignition than after ignition. Motorola objects to the Special Master's recommendation, arguing that the critical issue is whether Capwell discloses a series-resonant circuit and that the Special Master can make such a determination.

In light of the experts' differing opinions and because it would not be proper for the Special Master to decide which expert is correct, the Court adopts the recommendation of the Special Master and denies Motorola's Motion for Summary Judgment as to the invalidity of the claim 17 of the 609 Patent.

## II. PLAINTIFF NILSSEN'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 96 C 5571

### A. 067 Patent

Nilssen moves for summary judgment of claims 4 and 21 of the 067 Patent by Motorola's use of its rapid-start, half bridge ballast product line. The Special Master recommended denying Nilssen's motion based on his previous recommendation that summary judgment be granted for

Motorola based on anticipation by the Stolz Patent. As stated above, the Special Master's recommendation as to whether claims 4, 21, and 32 are anticipated by Stolz was adopted by the Court. Accordingly, the Special Master's recommendation to deny Nilssen's Motion for Summary Judgment as to claims 4 and 21 of the 067 Patent based on anticipation by the Stolz Patent is also adopted.

Alternatively, the Special Master addressed Motorola's argument that summary judgment should be denied because a genuine question of material fact exists as to whether Motorola's accused ballasts provide an inverter voltage that is "substantially constant" during the second sub-period. The Special Master found such a material issue of fact did exist, as demonstrated by the parties' experts' differing opinions. Finding that the parties' experts' differing opinion established a question of material fact, he recommended denying Nilssen's Motion for Summary Judgment as to claims 4 and 21 of the 067 Patent on that finding. Nilssen objects to this recommendation, arguing that Motorola admitted that its accused ballasts provided an inverter voltage that is "substantially constant" during the second sub-period in its response to Nilssen's proposed infringement claim chart.

Motorola's response to Nilssen's proposed claim chart does state that "the instantaneous magnitude is substantially constant, as taught by prior art to the 067 Patent" during the second sub-period of its accused ballasts. This statement by Motorola does not constitute an admission of infringement by Motorola; rather, it indicates that it believed at that time that its magnitude was substantially constant, "as taught by prior art to the 067 Patent." (Emphasis added). Accordingly, the Court also adopts the Special Master's alternative recommendation as to this claim and denies Nilssen's Motion for Summary Judgment of direct infringement of claims 4 and 21 of the 067 Patent.

B. 386 Patent

Nilssen also contends that he is entitled to summary judgment for direct infringement of claims 7, 30, and 39 of the 386 Patent. Nilssen alleges that Motorola infringes claim 7 of the 386 Patent because Motorola must "use" the accused electronic ballasts "configured with an AC source and a lamp, for example for purposes of testing." (Plaint.'s 56.1(a)(3) Statement ¶ 170). Motorola denies this allegation.

The Special Master recommended denying Nilssen's Motion for Summary Judgment as to claim 7 of the 386 Patent. The Special Master found that, while Nilssen had demonstrated that Motorola's accused ballasts met each of the limitations of claim 7 of the 386 Patent, a genuine issue of material fact exists as to whether Motorola "uses" the accused ballasts as alleged by Nilssen and as required by claim 6 of the 386 Patent, on which claim 7 depends. The parties did not file any objections to this recommendation. The Court adopts this recommendation of the Special Master. Accordingly, the Motion for Summary Judgment as to direct infringement of claim 7 of the 386 Patent is denied.

Nilssen also seeks summary judgment for claims 30 and 39 of the 386 Patent. Motorola argues that an issue of material fact remains as to whether Motorola's ballasts "draw a unidirectional current from the DC rail terminals," as required by claims 30 and 39 of the 386 Patent. The Special Master recommended denying Nilssen's Motion for Summary Judgment as to claims 30 and 39 of the 386 Patent, finding that genuine issues of material fact exist as to whether Motorola's ballasts "draw unidirectional current." The parties did not file any objections to this recommendation. The Court adopts this recommendation of the Special Master and denies Nilssen's Motion for Summary as to direct infringement of claims 30 and 39 of the 386 Patent.

Nilssen also moves for summary judgment on allegations of induced and contributory infringement pursuant to 35 U.S.C. § 271 of the 067 and 386 Patents.

A finding of induced or contributory infringement must be predicated on a direct infringement. *See C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 673 (Fed. Cir. 1990). Therefore, to establish either contributory or induced infringement, a plaintiff must first establish that users of the defendant's product, *i.e.*, Motorola's customers, directly infringe the patent claims. *See Sage Prods., Inc. v. Devon Indus., Inc.*, 45 F.3d 1575, 1577 (Fed. Cir. 1995).

The Special Master recommended denying summary judgment as to Nilssen's induced and contributory infringement of the 067 Patent and claims 30 and 39 of the 386 Patent because, as found above, Nilssen has not established direct infringement of these claims as to Motorola or its customers. The parties do not object to this recommendation, and it is adopted by the Court.

The Special Master recommended that summary judgment on Nilssen's claims of induced and contributory infringement of claim 7 of the 386 Patent be granted. It is undisputed that Motorola instructs its customers to connect the accused ballasts with an AC source and a lamp (Plaint,'s 56.1(a)(3) Statement ¶ 166; Def.'s Response to ¶ 166). Furthermore, Motorola's accused products have no other use than to be connected to an AC power source and a lamp. Therefore, Motorola's customers directly infringe claim 7 of the 386 Patent at the instruction of Motorola.

The Special Master found that these undisputed facts support Nilssen's claims of induced and contributory infringement of claim 7 and rejected Motorola's argument that summary judgment should be denied because Nilssen failed to specifically plead induced and contributory infringement.

Motorola objects to the Special Master's recommendation, arguing that he incorrectly concluded that Nilssen's general pleading of infringement pursuant to Section 271 was sufficient to

24

plead both direct and indirect infringement.

Section 271 lists all three types of infringement: subsection (a) concerns direct infringement; (b) inducement of infringement; and (c) contributory infringement. Section 271 states: "Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271. Here, Nilssen pled "infringement", which necessarily includes inducement of infringement and contributory infringement. Motorola did not seek a more definite statement and has been aware of Nilssen's allegations of both direct and indirect infringement (induced and contributory) for over a year.

Based on the above, the Court adopts the Special Master's recommendation and grants Nilssen's Motion for Summary Judgment as to induced and contributory infringement of claim 7 of the 386 Patent.

## C. 356 Patent

Nilssen withdrew his claims of patent infringement of claims 19 and 21 of U.S. Patent No. 5,214,356 after filing his motion for summary judgment, which included these claims. Accordingly, Nilssen's Motion for Summary Judgment as to these claims is denied as moot.

## III. DEFENDANT MAGNETEK'S MOTION FOR SUMMARY JUDGMENT CASE NO. 98 C 2229

Nilssen has accused MagneTek of infringing several patents: United State Patent Nos. 4,677,345 (345 Patent); 5,047,690 (690 Patent); 4,963,795 (795 Patent); and 5,432,409 (409 Patent).

(Def. MagneTek's 56.1(a)(3) Statement ¶ 7).[3]  All of the patents-in-suit list Ole K. Nilssen as the sole named inventor.  (Id., at ¶ 8).

## A. 345 Patent

Nilssen accuses MagneTek's v-series and s-series dimmable ballasts of infringing claim 24 of the 345 Patent.[4]  MagneTek argues that summary judgment is proper because the accused ballasts do not contain a toroid heater and that Nilssen is precluded by the doctrine of prosecution estoppel from asserting that Nilssen's symmetry control circuit is an equivalent to the toroid heater.

The parties' arguments and the applicable law are the same as previously discussed in Motorola's alleged infringement of claim 24 of the 345 Patent above, with the exception that Motorola's dimmable ballasts contain a modulation circuit and MagneTek's dimmable ballasts contain a symmetry control circuit.  As in Motorola's motion, the Special Master recommended granting summary judgment for MagneTek.

Nilssen propounds the same argument as in Motorola, and identifies the same new argument and language indicating that an equivalent to a toroid heater could be used.  Based only on the reasons set forth above (when discussing the Motorola case), the Special Master's recommendation as to the infringement of 24 of the 345 Patent is adopted; and  MagneTek's Motion for Summary Judgment as to no infringement of claim 24 of the 345 Patent is granted.

---

[3]Nilssen originally alleged infringement of additional claims of patents (claim 8 of No. 4,963,754; claims 39 and 44 of No. 5,039,919; claim 16 of No. 5,374,874; and claim 20 of No. 5,047,690); however, Nilssen has dropped these claims as indicated by his "Statement of Nonliability."  Accordingly, MagneTek's Motion for Summary Judgment as to these claims is denied as moot.

[4]The relevant facts of the patents discussed in this case that are identical to those discussed above are not repeated.  Any relevant facts that are not included above are provided where applicable.

The 690 Patent, entitled "Inverter Power Supply and Ballast Circuit," was issued on September 10, 1991. (Def. MagneTek's 56.1(a)(3) Statement ¶¶ 45-47). Nilssen accuses MagneTek's dimmable ballasts of infringing claims 13 and 17 of the 690 Patent. (Id., at ¶ 48). Nilssen also accuses MagneTek's compact fluorescent I, II, and III of infringing claim 17 of the 690 Patent. (Id., at ¶¶ 49-50). Nilssen alleges an August 14, 1980 conception and effective filing date for claims 13 and 17 of the 690 Patent. (Id., at ¶ 51).

Claim 13 of the 690 Patent depends from independent claim 12. (Id., at ¶ 52). Claim 12 of the 690 Patent requires a "control means" that must be "operative, in response to manifest control action provided at a set of control input terminals, to control the fundamental frequency of the alternating current, thereby to effect adjustment of the magnitude of the output current." (Id., at ¶¶ 53-54).

MagneTek argues that its dimmable ballast does not contain a toroid heater as required by claim 13 of the 690 Patent and that Nilssen is estopped from arguing MagneTek's control circuit is equivalent to the toroid heater based on prosecution averments made for claim 24 of the 345 Patent. During prosecution of the 690 Patent, Nilssen's employee, Fiene, referred to the text of the 345 Patent when discussing the "control means" of the 690 Patent.

The Special Master recommended granting summary judgment as to claim 13 of the 690 Patent, finding that the prosecution history of the related 345 Patent concerning toroid heaters was equally applicable to the "control means" of claim 13 of the 690 Patent because they relate to the same structure. Nilssen objects to the Special Master's recommendation on the same grounds as his objection concerning the 345 Patent. Based on the finding above concerning the 345 Patent, the

Special Master's recommendation is adopted by the Court ; and MagneTek's Motion for Summary Judgment as to claim 13 of the 690 Patent is granted.

MagneTek argues that summary judgment for claim 17 of the 690 Patent should be granted based on the same argument made by Motorola -- MagneTek's patent does not contain an "inductor directly coupled to the ballast's inverter", and it is invalid because it is anticipated by the Capwell Patent.

The Special Master recommended denying MagneTek's Motion for Summary Judgment as to claim 17 of the 690 Patent. The Special Master found, as in Motorola above, that issues of material fact exist as to whether MagneTek's accused ballast is coupled directly to the inverter and whether the Capwell Patent inherently discloses a cathode heating voltage having a substantially higher magnitude before lamp ignition than after lamp ignition. MagneTek objects to the Special Master's recommendation, arguing that genuine issues of material of fact do not exist because the Special Master, as one trained in the art, can make these determinations. As stated in Motorola above, the Special Master is not a "tie breaker". *See Oney*, 182 F.3d at 895. Therefore, the Court rejects MagneTek's objection and adopts the Special Master's recommendation as to claim 17 of the 690 Patent.

For the above reasons, MagneTek's Motion for Summary as to no infringement of claim 13 of the 690 Patent is granted. MagneTek's Motion for Summary Judgment as to no infringement of 17 of the 690 Patent and invalidity of claim 17 of the 690 Patent is denied.

C. 795 Patent

The 795 Patent, entitled "Step-Controllable Electronic Ballast," was issued on October 16, 1990. (Def. MagneTek's 56.1(a)(3) Statement ¶¶ 65-66). Nilssen accuses MagneTek's s-series

dimmable ballasts of infringing claim 7 of the 795 Patent. (Id., at ¶ 67). Nilssen alleges a March 2, 1989 conception and effective filing date for claim 7 of the 795 Patent. (Id., at ¶ 68).

MagneTek argues that claim 7 of the 795 Patent is invalid because it is anticipated by the United States Patent No. 4.383,204 issued to Roberts on May 10, 1983. The Roberts Patent explicitly incorporates United States Patent No. 4,346,332 (Walden Patent) by reference and in its entirety. "Incorporation by reference provides a method for integrating material from various documents into a host document – a patent or printed publication on an anticipation determination – by citing such material in a manner that makes clear that the material is effectively part of the host documents as if it were explicitly contained therein." *Advanced Display Sys. v. Kent State University*, 212 F.3d 1272, 1282 (Fed. Cir. 2000).

Nilssen argues that the Roberts Patent does not vary frequency in response to which input terminal is connected, and the Walden Patent does not provide the missing limitation because the Walden Patent discloses only two terminals, not three terminals, as required by claim 7 of the 795 Patent.

The Special Master recommended denying MagneTek's Motion for Summary Judgment as to claim 7 of the 795 Patent, finding that an issue of material fact exists as to whether Roberts and Walden, when read together, invalidate Nilssen's claim. MagneTek objects to the Special Master's recommendation, arguing that a genuine issue of material fact does not exist because the Special Master, as one skilled in the art, can interpret Roberts and Walden to determine if they disclose the limitation recited in claim 7. As previously stated, the Special Master is not a "tie breaker". *See Oney*, 182 F.3d at 895. Therefore, MagneTek's objection is rejected, and the Special Master's recommendation is adopted by the Court. Accordingly, MagneTek's Motion for Summary Judgment

as to invalidity of claim 7 of the 795 Patent is denied.

D. 409 Patent

The 409 Patent, entitled "Electronic Ballast with Parallel-Tuned Output Circuit," was issued on July 11, 1995. (Def. MagneTek's 56.1(a)(3) Statement ¶¶ 69-70). Nilssen accuses MagneTek's instant-start, current-fed half bridge and rapid-start, current-fed half bridge ballasts infringe claims 3, 6, 7, 35, 36, and 37 of the 409 Patent. (Id., at ¶ 71). Nilssen alleges an October 5, 1984 conception and effective filing date for claims 3, 6, 7, 35, and 37 of the 409 Patent. (Id., at ¶ 72). Claims 36 and 37 of the 409 Patent require an "inductor means". (Id., at ¶ 77). In the *Markman* claim construction, the court held that the "inductor means" limitation of the 409 Patent requires "a two winding inductor having a total inductance large enough to keep the current flowing from the DC source into the inverter substantially constant." *Nilssen v. Motorola*, 2000 WL 369397 (N.D. Ill. April 7, 2000).

MagneTek first argues that its ballasts do not infringe on claims 36 and 37 of the 409 Patent because its ballasts do not keep current flowing through the DC source into the inverter substantially constant. This is the same argument made above by Motorola as to the 409 Patent. In response, Nilssen argues that MagneTek's accused ballasts show a current that is "substantially constant". Nilssen cites to testing and declarations by its expert, Fiene, and MagneTek's expert Stevens' opinion concerning one of plaintiff's exhibits relating to the Rosa Patent.

After reviewing the testing results and experts' declarations, the Special Master recommended granting summary judgment of no infringement on claims 36 and 37 of the 409 Patent. The Special Master found that Fiene did not take a position on whether the additional test measurements showed a "substantially constant" current through the "inductor means". Instead,

Fiene erroneously relied on a declaration by Stevens concerning the Rosa Patent, concluding that MagneTek has taken the position that leads to the conclusion that the accused ballasts do have a substantially constant current through the inductor means. Nilssen argues, as he did in Motorola, that the Special Master is incorrect because a reasonable jury could conclude that the accused ballasts meet the inductor means limitation of the 409 Patent.

The facts and expert declarations refute Nilssen's assertion that the foregoing presents a genuine issue of material fact. Accordingly, the Court adopts the recommendation of the Special Master and grants MagneTek's Motion for Summary Judgment as to no infringement of claims 36 and 37 of the 409 Patent.

MagneTek also argues that all of Nilssen's claims relating to the 409 Patent are invalid because the accused device was on sale more than a year before 409 Patent's effective filing date. Specifically, MagneTek argues that the half-bridge inverter recited in the claims of the 409 Patent was not supported by Nilssen's specification until July 22, 1993, when Nilssen filed an amendment adding the language, "at least two periodically conducting transistors series connected." Before this amendment, the 409 Patent claim applications disclosed only full-bridge inverters. Nilssen argues that the correct effective filing date was before January 1993; therefore, the "on-sale" bar does not apply.

The parties do not dispute that MagneTek's accused ballasts were on sale as early as January 1992. If January 1992 is more than one year before the effective filing date of the asserted 409 Patent claims, those claims are invalid under the on-sale bar of Section 102(b). *See Vanmoor v. Wal-Mart Stores, Inc.*, 201m F.3d 1363, 1366 (Fed. Cir. 2000) (summary judgment of invalidity affirmed under on-sale bar where accused device was offered for sale more than one year before the

effective filing date of the patent).

The Special Master found, and the parties agree, that the determinative issue on summary judgment is whether a claim that covers both a half-bridge inverter (having only two transistors) and a full-bridge inverter (having four transistors), finds written description support in an application that discloses only a four-transistor full-bridge inverter. The patent examiner's lack of objection to the amendment as adding new matter supports a finding that the half-bridge inverter is included in a description of a full-bridge inverter. However, Nilssen's expert's testimony that the only support for "the inverter being anything other than a full bridge inverter, could be found in the amended specification", supports the opposite.

The Special Master recommended denying MagneTek's Motion for Summary Judgment as to these claims, finding that the factual record, as demonstrated above, was too inconclusive to overcome the presumption of validity under 35 U.S.C. § 282. MagneTek objects to the Special Master's recommendation, arguing that the half-bridge inverter was not disclosed until 1993.

The above facts demonstrate that an issue of material fact exists as to whether the half-bridge inverter was disclosed prior to the 1993 amendment. Accordingly, the Court adopts the recommendation of the Special Master and denies MagneTek's Motion for Summary as to the invalidity of claims 3, 6, 7, 35, 36, and 37 of the 409 Patent.

## IV. PLAINTIFF NILSSEN'S MOTION FOR SUMMARY JUDGMENT
### CASE NO. 98 C 2229

A. 409 Patent

Nilssen moves for summary judgment of claims 3, 6, 7, 35, 36, and 37, of the 409 Patent by MagneTek's's instant-start, current-fed half-bridge ballasts and rapid-start, current-fed half-bridge

ballasts.

MagneTek argues that its accused ballasts do not infringe claim 3 of the 409 Patent because its ballasts do not produce a substantially sinusoidal voltage having a frequency that is "several times" higher than that of the AC power line voltage, as required by claim 3, because its ballasts produce a frequency "many times" higher than that of the AC voltage.

Claim 3 of the 409 Patent recites "an inverter-type ballasting circuit ... causing a substantially sinusoidal voltage to exist between the first transistor and one of the DC input terminals, the frequency of the substantially sinusoidal AC voltage being several times higher than that of the AC power line voltage". (Emphasis added). The parties do not dispute that MagneTek's accused ballasts produce AC voltages having frequencies of 25 kilohertz and 28 kilohertz and that these frequencies are many times greater than the 60 hertz AC power line voltage.

The meaning of "several times", as used in claim 3, was not previously determined in the *Markman* hearing. MagneTek contends that it should be defined as "more than three, but not many", citing to the dictionary definition of "several". The Special Master rejected this definition, citing to other dictionary definitions that do not include an upper limit (but not many), *i.e.*, several is defined as "more than one" or "more than two". The Special Master also determined that MagneTek's claim interpretation would improperly exclude a preferred embodiment in the patent because the voltage frequency in the 409 Patent is 30 kilohertz, 500 times greater than the 60 hertz AC power line frequency. Therefore, "several times higher", as used in the 409 Patent, included a ratio of 500 to 1, which is greater than MagneTek's ballast's frequency ratios of 416.7 and 466.7. Having rejected MagneTek's claim interpretation, the Special Master recommended granting Nilssen's Motion for Summary Judgment as to infringement of claim 3 of the 409 Patent.

The Court adopts the claim construction of "several times" as determined by the Special Master and adopts the recommendation of the Special Master. Accordingly, Nilssen's Motion for Summary Judgment as to direct infringement of claim 3 of the 409 Patent is granted.

The Special Master also recommended granting summary judgment on claim 6 of the 409 Patent. MagneTek objects to this recommendation, arguing that because claim 3 is not infringed and claim 6 is dependent on claim 3, claim 6 cannot be infringed. As stated above, claim 3 has been infringed; therefore, the dependent claim, claim 6, must be infringed. Accordingly, MagneTek's argument is rejected, and the Court adopts the Special Master's recommendation and grants Nilssen's Motion for Summary Judgment as to direct infringement of claim 6 of the 409 Patent.

Nilssen also seeks summary judgment of claim 7 of the 409 Patent. MagneTek argues that summary judgment should be denied because its accused ballasts do not meet the limitation of a "unidirectional voltage".

Claim 7 of the 409 Patent recites "a unidirectional voltage exist[ing] between the second transistor's common terminal and the first transistor's output terminal." MagneTek provided a declaration by its expert, Stevens, that MagneTek's ballasts do not meet this limitation.

The Special Master recommended denying Nilssen's Motion for Summary Judgment as to infringement of claim 7 of the 409 Patent, finding that Stevens' declaration, while possibly speculative, demonstrated the existence of an issue of material fact as to whether MagneTek's accused ballasts met the unidirectional voltage requirement of claim 7. Nilssen objects to the Special Master's recommendation, arguing that Stevens' conclusory declaration is not sufficient to preclude summary judgment. The Court adopts the Special Master's recommendation and denies Nilssen's Motion for Summary Judgment as to direct infringement of claim 7 of the 409 Patent.

Nilssen also seeks summary judgment of induced and contributory infringement of claims 3 and 6 of the 409 Patent.

As stated above, Nilssen has established direct infringement of claims 3 and 6. MagneTek argues that summary judgment should be denied because it denies that it instructs its customers to connect the accused ballasts to an AC power source and a lamp. However, it previously admitted that it sells the ballasts "for use with one or more fluorescent lamps".

Based on these facts, the Special Master recommended granting Nilssen's Motion for Summary Judgment of induced and contributory infringement as to claims 3 and 6 of the 409 Patent. MagneTek objects to the Special Master's recommendation, arguing that Nilssen has not established direct infringement. As stated above, the Court has adopted the recommendation of the Special Master as to direct infringement of these claims. Accordingly, the Court rejects MagneTek's argument and adopts the Special Master's recommendation as to induced and contributory infringement of these claims. Accordingly, Nilssen's Motion for Summary Judgment as to induced and contributory infringement of claims 3 and 6 of the 409 Patent is granted.

B. 795 Patent

Nilssen seeks summary judgment as to claim 7 of the 795 Patent against MagneTek's s-series dimmable ballasts. MagneTek argues that summary judgment should be denied because Nilssen's infringement claim improperly broadens the scope of claim 7 so far as to invalidate the claim. MagneTek does not argue that its accused ballasts fail any of the limitations of claim 7, as contended by Nilssen.

The Special Master recommended granting Nilssen's Motion for Summary Judgment as to claim 7 of the 795 Patent, finding that MagneTek does not dispute infringement and that its

35

invalidity argument should be decided separately. MagneTek objects to the Special Master's recommendation, arguing that the Special Master misconstrued MagneTek's argument against summary judgment.

MagneTek's response to Nilssen's Motion for Summary Judgment clearly sets forth its argument that summary judgment as to infringement should be denied because claim 7 of the 795 Patent is invalid. The issues of infringement and invalidity should be decided separately. *See Lindemann Maschinenfabrik GMBH v. American Hoist & Derrick Co.*, 730 F.2d 1452, 1463 (Fed. Cir. 1984). Although MagneTek may be able to prove its invalidity claim, it has not presented any genuine issues of material fact as to infringement.

Based on the above, the recommendation fo the Special Master is adopted by the Court, and Nilssen's Motion for Summary Judgment as to direct infringement of claim 7 of the 795 Patent is granted.

Nilssen also seeks summary judgment as to induced and contributory infringement of claim 7 of the 795 Patent. As found above, Nilssen has established direct infringement. While MagneTek denies that it instructs its customers to connect the accused ballasts to an AC power source and a lamp, it previously admitted that it sells the ballasts "for use with one or more fluorescent lamps".

Based on the above, the Special Master recommended granting Nilssen's Motion for Summary Judgment as to induced and contributory infringement of claim 7 of the 795 Patent. MagneTek objects to the Special Master's recommendation, arguing that Nilssen has not established direct infringement. MagneTek's direct infringement argument has been rejected. Accordingly, the Court adopts the Special Master's recommendation and grants Nilssen's Motion for Summary Judgment as to induced and contributory infringement of claim 7 of the 795 Patent.

36

<u>C. 874 and 690 Patent</u>

Nilssen withdrew his claims of patent infringement of claim 16 of U.S. Patent No. 5,374,874 and claim 20 of U.S. Patent No. 5,047,690 after filing his motion for summary judgment, which included these claims. Accordingly, Nilssen's Motion for Summary Judgment as to these claims is denied as moot.

## V. CONCLUSION

For the forgoing reasons, the parties' Agreed Motions for Leave to File Responses Instanter to Objections to the Special Master's Report are denied. Motorola's Motion for Action on Motorola's Objections to the Special Master's Report is granted in part and denied in part. MagneTek's Motion for Action on MagneTek's Objections to the Special Master's Report is granted in part and denied in part. Nilssen's Motion for Resubmission to the Special Master Pursuant to Rule 52(e)(2) is denied. Motorola's Motion to Strike New Evidence and New Arguments Raised in Nilssen's Objections to the Special Master's Report is granted. Nilssen's Motion for Action on Nilssen's Objections to the Special Master's Report and Motion to Sustain Nilssen's Objections to the Special Master's Report are granted in part and denied in part.

Motorola's Motion for Summary Judgment is granted in part and denied in part. Motorola's Motion for Summary Judgment as to no infringement of claim 24 of the 345 Patent and claims 9, 16, and 37 of the 409 Patent is granted. Motorola's Motion for Summary Judgment as to invalidity of claims 4, 21, and 32 of the 067 Patent is granted. Motorola's Motion for Summary Judgment as to all other claims is denied.

Nilssen's Motion for Summary Judgment as to Defendant Motorola is granted in part and denied in part. Nilssen's Motion for Summary Judgment as to Defendant Motorola is granted as to

induced and contributory infringement of claim 7 of the 386 Patent. Nilssen's Motion for Summary Judgment as to Defendant Motorola as to all other claims is denied.

MagneTek's Motion for Summary Judgment is granted in part and denied in part. MagneTek's Motion for Summary Judgment is granted as to no infringement of claim 24 of the 345 Patent, claim 13 of the 690 Patent, and claims 36 and 37 of the 409 Patent. MagneTek's Motion for Summary Judgment as to all other claims is denied.

Nilssen's Motion for Summary Judgment as to Defendant MagneTek is granted in part and denied in part. Nilssen's Motion for Summary Judgment as to Defendant MagneTek is granted as to direct infringement of claims 3 and 6 of the 409 Patent, induced and contributory infringement of claims 3 and 6 of the 409 Patent, direct infringement of claim 7 of the 795 Patent, and induced and contributory infringement of claim 7 of the 795 Patent. Nilssen's Motion for Summary Judgment as to Defendant MagneTek as to all other claims is denied.

Dated: February 6, 2001

_____
JOHN W. DARRAH
United States District Judge